SUPERIOR COURT
OF THE
STATE OF DELAWARE

CHARLES E. BUTLER
*JUDGE*

May 2, 2017

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0656

Amanda J. DiLiberto, Deputy Attorney General
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

Eugene J. Maurer, Jr., Esquire
Christina L. Ruggiero, Esquire
1201-A King Street
Wilmington, DE 19801

> **Re:** ***State v. Javon Jackson***
> **I.D.: 1609006213**
> *Defendant's Motion to Disclose Identity of Confidential Informant.* **GRANTED.**

Counsel:

This dispute revolves around an aborted drug deal and almost stipulated facts. For reasons not clear to the Court, the parties cannot agree on what to do about the informant and so the Court will.

The facts are fairly summarized by the State's response to the defendant's motion to reveal the identity of its confidential informant ("CI"):

> On September 8, 2016, Officer Kashner of the Newport Police Department made contact with a Confidential Informant in reference to a drug investigation. Specifically, the CI informed Kashner that he could purchase a "log" of heroin from a Naesean McNeil.
>
> In the presence of Kashner, the CI contacted (co)defendant McNeill by phone, and ordered on log of heroin for $200. Defendant McNeill

1

advised the CI that he could meet him in approximately 10 minutes at the Burger King located at 300 South Maryland Avenue.

Kashner transported the CI to the Burger King. While at the Burger King, Kashner observed the CI take a phone call from Defendant McNeill. Kashner overheard Defendant McNeill informing the CI that he would be arriving in a black Cadillac. The CI advised defendant McNeill that he would be standing in front of the Burger King waiting.

At approximately 19:02 hours, Kashner and CPL Davidson of the Newport Police Department set up surveillance on the Burger King parking lot, keeping the CI in their direct line of sight. At approximately 19:30 hours, police observed a black Cadillac pull into the Burger King parking lot and drive to the front of the establishment where the CI was standing. When police observed the CI beginning to walk toward the Cadillac, they approached with their departmentally issued firearms drawn ordering its occupants to exit. Therefore, the planned drug transaction did not actually take place.[1]

Defendant McNeill was seated in the front passenger seat. He had a log of heroin in his lap and $322 in U.S. currency in his hand. Defendant Jackson was empty handed, had nothing in his lap, but police did recover a second log of heroin in the door well on the driver's side door and a third log inside the center console of the vehicle.

Jackson has moved the Court for an order to disclose the identity of the CI, even as he takes no substantial issue with the State's recitation above. According to Jackson, the CI dealt exclusively with the codefendant McNeill and the CI has no testimony or evidence to give that would in any way implicate Defendant Jackson. The State says as much in its recitation above and indeed, at the

---

[1] State's Resp. at 2.

2

preliminary hearing, there was testimony that when a cell phone was recovered from McNeill, it was the same number called by the CI and witnessed by the police officer. In response to the motion to disclose the identity of the informant, the State says "the standard is whether the CI's testimony would materially aid the defense, and the State submits that, in this case, it would not." [2]

D.R.E. 509 provides the general rule of privilege to the government allowing it to refuse to identify an informant "who has furnished information to or assisted in an investigation into a possible violation of a law." Rule 509(c) however, states that "No privilege exists under this rule if the identity of the informer or his interest in the subject matter of his communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the government."[3]

The use of informants in drug investigations enjoys a rich history, in Delaware and nationally, and little purpose would be served in chronicling all of the many ways their identities may be hidden from the suspects in a drug investigation. When the "confidential" informant orders up drugs from his supplier, meets his supplier with the police waiting just a few feet away and actually approaches his supplier before the police move in, there is little

---

[2] *Id.* at 5-6.

[3] D.R.E. 509.

3

"confidential" in the informant's identity, at least to the supplier. The informant can only be the person who called the supplier, ordered the log, said he'd be in front of the Burger King, which is where the supplier and the informant met a short while later. This informant was put into the middle of this transaction with nary an effort to hide his identity.[4]

The Court has little doubt but that codefendant McNeill knows full well who the informant is. The State has identified the informant's conduct in sufficient detail to leave no doubt as to his identity. It may be that McNeill, apparently known in the business as "No Limit" only knows the informant by some other equally colorful street name, but that is not the point: the fact is the government structured this transaction in such a way as to leave the seller no doubt as to the identity of the informant even if he did not know his name well enough to mail him a Christmas card at his family address.

The waiver language in Rule 509(c) that the government waives its privilege when it makes disclosure to "those who would have cause to resent the communication" comes directly from the U.S. Supreme Court's decision in

---

[4] *See, e.g., Cooper v. State,* 2011 WL 6039613 (Del. Super. Dec. 5, 2011)(informant who set up the deal came to the prearranged location but only pointed out the defendant as he ducked inside the undercover car and therefore was not a witness to the arrest. Disclosure not mandated).

*Roviaro v. United States*.[5] Since our rule takes language directly from the opinion, it is one worth looking at.[6]

Roviaro was charged with selling heron to one "John Doe" who was acting as a government informant on the occasion in question. The defense sought government disclosure of the informant's identity and the government claimed privilege. The Court said:

> The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.[7]

In this case, the identity of the informant was effectively revealed to codefendant McNeill, with whom the informant made the delivery arrangement. It may well be that, consistent with the State's theory, the driver of the vehicle, defendant Jackson, also knows who the informant is. Then again, it may not. It is not for Jackson to admit it – he does, after all, have a constitutional privilege not to do so. But the Court sees no distinction in the waiver analysis under Rule 509

---

[5] 353 U.S. 53, 60 (1957).

[6] While the case has something to teach us as to the origins of the term "those who would have cause to resent the communication," one cannot help but be struck at the state of drug transaction eavesdropping in 1957, which in this case involved stuffing a detective into the trunk of a car so he could hear the seller and the informant arranging their deal.

[7] *Roviaro*, 353 U.S. at 60 (internal citations omitted).

when the government waives its informant privilege as to one defendant and its theory of the case is that both defendants possessed the heroin with intent to deliver it. It is only happenstance that the passenger/supplier McNeill has pled guilty and Jackson remains to be tried. The government, having "burned" the informant as to McNeill, cannot now claim privilege as to his codefendant.

The Court disagrees with the State's assertion that the fact that the informant did not communicate with Jackson is not exculpatory. The State has charged Jackson with possession of heroin with intent to deliver. The only reason it is not a delivery charge is because the delivery was interrupted by the arrest. In order to prove an intent to deliver, the circumstances of the two defendants' arrival at the Burger King is certainly relevant. If Jackson was simply giving "No Limit" a ride to the Burger King – a proposition he undoubtedly would like the jury to believe – testimony from the buyer that he did not speak to or make any arrangements with Jackson would obviously be helpful.

The State asks the Court to consider a Superior Court Order in a case titled *Battin v. State*.[8] The Court has done so and finds it distinguishable on its facts. Moreover, *Battin* was essentially an analysis of the four *"Flowers"* categories

---

[8] 2013 WL 6039454 (Del. Super. Oct. 16, 2013).

6

relating to when the government's duty of disclosure of its informant is triggered.[9] The Court, however, is not persuaded that this is a case involving *Flowers* as the Court finds that the State waived its claim to confidentiality of the informant by revealing his identity to the defendants in the manner in which the drug transaction was structured.

Finally, the State argues that McNeill pled guilty and if defendant Jackson really wants to produce evidence that he was not part of the CI/McNeill drug deal, he can just call McNeill. But it is not for the State to pick and choose the defendant's witnesses for him. One supposes the State would like nothing more than to cross examine codefendant McNeill after he has testified as a defense witness for Jackson. The Court rejects the notion that the State can avoid its obligation to disclose the identity of the CI on grounds that the defendant may be able to fend for himself by calling his now convicted felon codefendant. That argument may hold some sway in some other context; it has none here.

---

[9] In *Flowers*, the Delaware Superior Court identified 4 categories of cases that implicate the duty to reveal the identity of the informant: (1) The informer is used merely to establish probable cause for a search. (2) The informer witnesses the criminal act. (3) The informer participates but is not a party to the illegal transaction. (4) The informer is an actual party to the illegal transaction. *Flowers* at 567. If the Court were inclined to engage in a *Flowers* analysis, it would conclude that the case fits in "category 3" and that the informant's testimony could materially aid the defense, which may be another way to get to the same place, but is analytically disingenuous: since the informant ordered up the log, it is at least arguable that he "is an actual party" to the transaction. But such a holding draws in far broader issues than is necessary to tackle here.

The State candidly writes that "The CI cannot speculate as [to] Defendant Jackson's involvement. The CI was not inside the vehicle with Defendants Jackson and McNeill. He does not know what conversations took place between Defendants Jackson and McNeill, or whether Defendant Jackson conspired with Defendant McNeill to commit the crime of Drug Dealing."[10] It seems to the Court that this is exactly the point the defense has been driving at. This may simply be a problem of the parties talking past each other but, on the law, the Court is satisfied that the State must disclose the identity of the confidential informant. In addition, the Court will Order that the State inform the defense of the informant's last known address and any other methods by which the State is aware to contact the informant so that the defense may put him under subpoena to testify at trial. I will add, somewhat parenthetically, that once the disclosures are made and the State has exercised a good faith effort to make the informant available, the State has discharged its duties under Rule 509. The risk that the informant will not cooperate by honoring a subpoena or otherwise is the same risk any party has in corralling a recalcitrant witness. Obviously, if the parties work out a stipulation that avoids the necessity of calling the informant at all, many of these difficulties would be avoided. Just saying.

Judge Charles E. Butler

---

[10] State's Resp. at 7-8.